# United States Court of Appeals
## For the First Circuit

No. 01-2454

MANCHESTER SCHOOL DISTRICT,

Plaintiff, Appellant,

v.

MARGARET "PEGGY" CRISMAN, AS SURROGATE PARENT
FOR KIMBERLI M., and PITTSFIELD SCHOOL DISTRICT,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Lynch, Circuit Judge,
Campbell and Magill,[*] Senior Circuit Judges.

Dean B. Eggert with whom Paul L. Apple and Wadleigh, Starr &
Peters, P.L.L.C. were on brief for appellant.
Lynn Zygomont with whom Ronald K. Lospennato and Disabilities
Rights Center, Inc. were on brief for appellee Margaret "Peggy"
Crisman.
Jed Z. Callen with whom Baldwin, Callen, Hogan & Kidd,
P.L.L.C. was on brief for appellee Pittsfield School District.

September 23, 2002

[*]Of the Eighth Circuit, sitting by designation.

**CAMPBELL, <u>Senior Circuit Judge</u>**.  At issue in this appeal is whether the Manchester School District ("MSD"), a school district within the State of New Hampshire, has a continuing duty to pay for the special education expenses of Kimberli M.

Kimberli, now fourteen years old, is a developmentally delayed child.  Since the age of seven months she has lived at the Brock Home, a state licensed home for children located in Pittsfield, New Hampshire.  Because the home for children where Kimberli lives is located within the Pittsfield School District, she attends school there[1]; and because of her disabilities she receives special education services under provisions of federal and state law.[2]  But because state educational authorities have determined that MSD was Kimberli's "sending district," as that term is used in the relevant New Hampshire statutes, <u>infra</u>, the New Hampshire Department of Education ("NHDOE") requires MSD to reimburse the Pittsfield School District for the cost of the educational services furnished by the latter to Kimberli.

---

[1]New Hampshire statutory law provides that a child placed in a home for children shall attend school in the district where the home is located.  N.H. Rev. Stat. Ann. §§ 193:12 V and 193:28 (1998).  Those statutes and other relevant New Hampshire statutes pertaining to the provision of special education services to children with disabilities are cited and discussed in the body of the opinion.  They are also set out, in material part, in an Appendix at the end of this opinion.

[2]<u>See</u> Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1412(a)(1)(A) (2000); N.H. Rev. Stat. Ann. § 186:C-1 (1998) (providing for the furnishing of a free appropriate public education to children with educational disabilities).

MSD strenuously objects to being held financially responsible for Kimberli's educational expenses. It points out that Kimberli's parents are not New Hampshire residents. Born in Colorado, Kimberli came, as an infant, with her parents to Manchester, New Hampshire in 1989, where she was severely injured in an accident. At the age of seven months, while her parents were still in Manchester, she was placed, with the assistance of New Hampshire officials, in the Brock Home in Pittsfield, New Hampshire. Soon thereafter her parents left New Hampshire, leaving Kimberli in the Brock Home where she has since resided. In 1995, Kimberli's parents were divorced, with Kimberli's father being awarded custody of the children, including Kimberli, in a divorce decree issued by an Ohio court. Her father resides in Akron, Ohio, and apparently remains satisfied with Kimberli's placement in New Hampshire. Neither parent appears to be involved with her or to contribute to her support.

In the view of MSD, Kimberli's residence has, by operation of law, become that of her father, making her an Ohio resident. MSD resents being forced to pay for the educational expenses of a minor whom it regards as an out-of-state resident. MSD challenges the correctness of the NHDOE's interpretation of New Hampshire statutory law so as to charge MSD for Kimberli's educational expenses.

After failing over a period of years to convince New Hampshire education authorities that it should not be held responsible for Kimberli's educational expenses, MSD sued under 20

U.S.C. § 1415(i)(2)(A), in the United States District Court for the District of New Hampshire.[3]  Acting on cross motions for summary judgment, the district court agreed with the NHDOE's interpretation of state law imposing liability for Kimberli's educational expenses upon MSD in the present circumstances.  This appeal followed.  We affirm.

## I.    FACTS

This case was disposed of in the district court on cross-motions for summary judgment filed by the plaintiff-appellant, MSD, on the one hand, and, on the other, by the defendants-appellees, Margaret "Peggy" Crisman, as Surrogate Parent for Kimberli M., and the Pittsfield School District.  We take the facts from the documentary record made by the parties in connection with their cross-motions.

Kimberli M. was born on September 5, 1988, to James and Paula M. in Colorado.  In January 1989, while she and her parents were in Manchester, New Hampshire, Kimberli was the victim of an accident that left her blind and severely developmentally delayed. Following several months of medical treatment in Manchester, New Hampshire, and Boston, Massachusetts, Kimberli's parents, with the aid of the New Hampshire Division of Children and Youth Services, placed Kimberli in the Brock Home, located in Pittsfield, New

---

[3]20 U.S.C. § 1415(i)(2)(A) states, in pertinent part, that a party aggrieved by a decision of a State education agency regarding the identification, evaluation, or educational placement of a child, or the provision of a free appropriate education for a child shall have the right to bring a civil action "in a district court of the United States without regard to amount in controversy."

Hampshire, a "home for children" licensed by the New Hampshire Department of Mental Health. See N.H. Rev. Stat. Ann. § 193:27 I.[4] On the application for placement, Kimberli's parents listed their address as 213 Pine Street, Manchester, New Hampshire. Although the parents, James and Paula M., appear to have retained legal custody of Kimberli at this time, they had little or no contact with her after she went to the Brock Home. Her parents moved to South Carolina shortly after Kimberli was placed in the Brock Home.

Because of her several disabilities, Kimberli was entitled under federal and New Hampshire law to receive special education services beginning at the age of three. See 20 U.S.C. § 1412(a)(1)(A); N.H. Rev. Stat. Ann. § 186-C:1.[5] In May 1992, the Moore Center Services, Inc.,[6] on behalf of Kimberli, requested the NHDOE to make a so-called "district of liability" determination to decide which school district in New Hampshire, if any, was responsible to pay for the expenses of Kimberli's education. In a letter dated May 15, 1992, the NHDOE, quoting N.H. Rev. Stat. Ann.

---

[4]This statute is set out, in relevant part, in the Appendix at the end of this opinion.

[5]The New Hampshire statute is set out, in relevant part, in the Appendix at the end of this opinion.

[6]The Moore Center is an area agency established under rules adopted by the New Hampshire Commissioner of Health and Human Services. It channels funds and services to individuals with developmental disabilities, and helps with residential placement. Kimberli has been a client of the Moore Center since April 1989. Her placement at the Brock Home has been funded through, and supervised by, the Moore Center. See N.H. Rev. Stat. Ann. § 171-A:18 (set out, in relevant part, at the end of this opinion).

§ 193:29[7], notified MSD that MSD was the district of liability for Kimberli because it was the district in which Kimberli had "most recently resided" prior to her placement in the Brock Home. Unhappy with this determination, MSD appealed to the Commissioner of Education, Charles H. Marston. The Commissioner affirmed the NHDOE's decision, and MSD sought no further review of the decision at this time although entitled to do so. Therefore, as matters stood, while Kimberli would attend school in the Pittsfield School District where the Brock Home was located, MSD had to pay for her special education costs.

In 1993, James M., Kimberli's father, relocated from South Carolina to Akron, Ohio with his remaining children. On February 1, 1993, Kimberli, along with Mrs. Brock of the Brock Home and an assistant, traveled to Ohio to visit her family. According to MSD (but not appellees), there was some thought at the time to place Kimberli in a facility located in Ohio. The attempted Ohio placement, if it was such, failed, and on February 4, 1993, Kimberli was returned to the Brock Home. MSD believed that the out-of-state trip formed a basis for once again challenging the 1992 NHDOE's district of liability determination. MSD argued, in a letter to the NHDOE, that the four-day trip constituted a move that altered Kimberli's residence, thereby relieving MSD of further liability. The NHDOE rejected MSD's characterization. It determined that the trip to Ohio was a mere visit that did not

---

[7]This statute, together with § 193:27 defining "sending district," is set out, in relevant part, in the Appendix at the end of this opinion.

constitute a change in residence. Thus, the NHDOE determined that MSD remained liable for Kimberli's educational expenses. MSD did not seek review of this decision.

Also in 1993, the NHDOE appointed an educational surrogate parent, Margaret "Peggy" Crisman, to act in the place of Kimberli's parents for purposes of making educational decisions. See N.H. Rev. Stat. Ann. § 186-C:14 III.[8] Since her appointment, Ms. Crisman has acted on Kimberli's behalf in all matters related to her education. In May 2000, Ms. Crisman became Kimberli's legal guardian.[9]

In 1995, James and Paula M. were divorced. James M. was awarded "residential and legal custody" of their four children, including Kimberli. Focusing on the 1995 divorce decree, MSD petitioned the NHDOE for yet another district of liability determination. MSD argued that, because James M. had been awarded "residential" custody, Kimberli, a minor, had become a resident of Akron, Ohio, where her father resided. MSD reasoned that Akron, and not Manchester, was liable financially for Kimberli's education. Consistent with this theory, MSD administratively discharged Kimberli from special education in 1996, reiterating that her residence, like her father's, was in Akron, Ohio. In

---

[8]This statute is set out, in relevant part, in the Appendix at the end of this opinion.

[9]The parties have not raised any issue over the effect, if any, Ms. Crisman's status as Kimberli's legal guardian may have on the NHDOE's 1992 district of liability determination. Because the parties do not raise the matter, we have no occasion to consider it.

response, Ms. Crisman requested a due process hearing before a hearing officer of the NHDOE. That request had the effect of temporarily maintaining the status quo as to Kimberli's placement and MSD's liability for her education expenses.

In January 1997, the hearing officer issued a decision that the doctrines of res judicata and collateral estoppel prevented MSD from re-litigating Kimberli's residency. The hearing officer determined that the NHDOE's 1992 district of liability decision constituted a final order binding upon MSD. However, the hearing officer allowed MSD to "produce evidence to demonstrate changed circumstances occurring since the 1992 DOL determination which might justify a different result . . . ."

Seeking to demonstrate changed circumstances, MSD argued that Kimberli's 1993 trip to Ohio and the divorce decree were new circumstances calling for a different district of liability determination. The hearing officer disagreed. She determined that the 1995 Ohio divorce decree, granting residential custody to Kimberli's father, did not affect the 1992 district of liability determination. She further concluded that any argument that the 1993 trip to Ohio constituted a move was barred by the statute of limitations pursuant to N.H. Rev. Stat. Ann. § 186-C:16-b I.[10]

MSD thereupon brought this action in the district court against Crisman, as Kimberli's surrogate parent, and the Pittsfield School District, contesting the hearing officer's conclusion. See

_____

[10]This statute is set out, in relevant part, in the Appendix at the end of this opinion.

note 3, <u>supra</u>.  MSD sought a determination that it was no longer financially liable for the special education costs associated with Kimberli's education.  While the case was pending in district court, New Hampshire amended its state residency laws as they related to school attendance.  The district court remanded the case to the hearing officer to determine

> whether the 1998 amendments to RSA 193:12 (in conjunction with the 1995 divorce decree) operated to effectuate a "change in circumstances" (i.e. changed the legal residence of a minor child), rendering Kimberli M. no longer legally resident in New Hampshire for educational purposes, therefore relieving MSD of any future obligation to fund her special education (i.e. thereby justifying MSD's decision to prospectively discharge Kimberli from its educational responsibility).

<u>Manchester Sch. Dist.</u> v. <u>Margaret Crisman, as surrogate Parent for Kimberli M. and Pittsfield Sch. Dist.</u>, No. 97-632-M, slip op. at 11 (D.N.H. Mar. 5, 1999).

On remand, the hearing officer concluded that "MSD remains legally liable for Kimberli's educational costs[] based on her placement in a home for children pursuant to RSA 193:27-29." <u>In re Kimberli M.</u>, IDPH 96-32 at 15 (New Hampshire Dept. of Ed. August 4, 1999).  The hearing officer concluded that the statutory changes to New Hampshire residency law had no legal bearing on Kimberli's right to special education in New Hampshire or MSD's liability for that education.  As an alternative holding, the hearing officer also ruled that, based on the facts before her, Kimberli, although an unemancipated minor, could establish residency in New Hampshire.  <u>Id.</u> at 12.  If this were so, the

Pittsfield School District, and not MSD, would be liable for the costs of Kimberli's education under New Hampshire law. Recognizing the potential implications of her decision, the hearing officer stated "this finding of Kimberli's residency is secondary to my primary ruling that MSD is responsible for the cost of educating Kimberli . . . and should not be construed as placing an obligation upon Pittsfield . . . ." Id. at 14.

At MSD's request, the federal case was reopened and MSD opposed the hearing officer's primary ruling that it was ultimately liable for the costs of Kimberli's education. The Pittsfield School District contested the hearing officer's secondary holding that Kimberli could establish residency in Pittsfield. The parties, including Crisman on behalf of Kimberli, made cross-motions for summary judgment. MSD argued that, pursuant to the newly amended section 193:12 II(a)(2)[11] and the 1995 divorce decree, Kimberli's legal residence was now Akron, Ohio and as such, Akron and not MSD was liable for the costs of her special education. Pittsfield contended that the hearing officer's conclusion that Kimberli had become a resident of Pittsfield contradicted the legislative purpose behind section 193:29.[12] Crisman asserted that the hearing officer had correctly interpreted and applied the law.

After requesting additional briefing and carefully reviewing the statutory language and relevant case law, the

---

[11]This statute is set out, in relevant part, in the Appendix at the end of this opinion.

[12]This statute is set out, in relevant part, in the Appendix at the end of this opinion.

district court agreed with the decision of the hearing officer and granted Kimberli judgment as a matter of law. Manchester Sch. Dist. v. Margaret Crisman, as surrogate parent for Kimberli M., and Pittsfield Sch. Dist., No. 97-632-M, 2001 WL 920056, at *3 (D.N.H. July 31, 2001). The district court concluded that Kimberli had a "placement-based right" to special education in New Hampshire and that MSD was liable for her educational costs.

Judgment originally entered on August 1, 2001. Pursuant to Fed. R. Civ. P. 59(e), Manchester filed a Motion to Alter or Amend the Judgment and requested that the district court certify the state law questions to the New Hampshire Supreme Court. On September 17, 2001, the district court issued an order denying the motion. Meanwhile, on August 15, 2001, Crisman filed a Motion for Reasonable Attorneys' Fees. The district court extended the time for filing an appeal until disposition of this motion as allowed by Rule 4(a)(4) of the Federal Rules of Appellate Procedure. In accordance with the orders entered August 1 and September 17, 2001, post-judgment judgment was entered on October 10, 2001. The time for filing an appeal began to run at this time. This appeal timely followed.

## II.     DISCUSSION

The basic question on appeal, as it was below, is whether MSD is financially liable for the costs of the special education being furnished to Kimberli by the Pittsfield School District. All parties agree that, while she is living at the Brock Home, Kimberli

-11-

will attend school in the Pittsfield School District.[13] The only issue remaining, as a practical matter, is which school district pays for the costs associated with the "free appropriate public education" guaranteed to children with educational disabilities. While MSD contends that Kimberli is an Ohio resident and that Ohio should therefore provide and finance her special education, there is no Ohio party involved here and no form of relief of this nature is being sought or is available in this proceeding.

MSD proffers several arguments to support its contention that it is not financially liable for the costs of Kimberli's education. MSD first argues that, pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1412(1)(A)[14], and the recently amended New Hampshire law, a New Hampshire School

---

[13]N.H. Rev. Stat. Ann. § 193:28 provides that "[w]henever any child is placed and cared for in any home for children . . ., such child, if of school age, shall be entitled to attend the public schools of the school district in which said home is located . . . ." See also N.H. Rev. Stat. Ann. § 193:12 V discussed below. The parties agree that the Brock Home is a "home for children" located in the Pittsfield School District.

[14]In 1997, Congress amended the IDEA significantly. Pub. L. No. 105-17, 11 Stat. 37 (1997). The litigation predates the amendments. The Amendments specified that they would "take effect upon the enactment of this Act," which was June 4, 1997. Amendments, tit. II, § 201(a)(1). The Amendments nowhere state that they apply retroactively, and courts addressing the effect of the Amendments have held that they are prospective only. See, e.g., Padilla v. Sch. Dist. No.1, 233 F.3d 1268, 1271 n.3 (10th Cir. 2000); Peter v. Wedl, 155 F.3d 992, 998 (8th Cir. 1998); Heather S. v. Wis., 125 F.3d 1045, 1062 (7th Cir. 1997); Cypress-Fairbanks Indep. Sch. Dist. v. Michael F., 118 F.3d 245, 247 n.1 (5th Cir. 1997). The substance of the provisions at issue in this opinion remain substantially the same as their counterparts in the IDEA's present form. For ease of reference, we cite the current version of the IDEA.

-12-

District is not liable for special education programming of a student whose parents do not reside in the state. Second, MSD contends, even if a "placement-based right" exists under New Hampshire law, it does not apply in Kimberli's case because she was not properly "placed" at the Brock Home within the meaning of the statute. Third, MSD avers that, in the event this court agrees that Kimberli was placed in the Brock Home, res judicata does not bar it from re-litigating the 1992 district of liability determination based on a significant change in circumstances. Finally, MSD urges this court, in light of the recent amendments, to certify to the New Hampshire Supreme Court the question of whether a New Hampshire school district remains liable for the costs of a student's special education if the parents reside out of state.

The district court rejected each of the above arguments. It determined that state law, and not the IDEA, dictated the financial liability of individual local school districts for the costs of a free and appropriate public education. Then, after examining the relevant New Hampshire law, the court concluded, as a matter of law, that the 1998 amendments to section 193:12 did not affect the original district of liability determination made by the NHDOE. Based on the language of the New Hampshire statutes the court determined that: (1) New Hampshire law allowed for an in-state school district to pay for the special education costs of a child whose parents reside outside the state; and (2) Kimberli was "placed" in the Brock Home as required by statute. Finally, it

-13-

denied MSD's post-judgment request for certification, viewing it as a belated procedural maneuver designed to prolong litigation.

Because this case involves only questions of law - the interpretation of federal and state statutes - we review the district court's conclusions de novo. Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002); G.D. v. Westmoreland Sch. Dist., 930 F.2d 942, 945 (1st Cir. 1991). While our review is plenary, New Hampshire, like most states, gives some deference to the reasonable interpretation of a state statute by the state administrative agency charged with the responsibility of enforcing that statute. In re Markievitz, 606 A.2d 800, 802 (N.H. 1992); Chambers v. Geiger, 573 A.2d 1356, 1358 (N.H. 1990). On issues lacking an overriding federal concern, both federalism and comity suggest we look at the NHDOE's interpretations in a similar light. The Supreme Court of the United States has admonished federal courts, when reviewing cases under the IDEA, to take great care not to displace the educational policy judgments made by state and local public education officials. See Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).

A.        **Federal Law and Financial Liability**

In its brief, MSD asserts that "[a] New Hampshire school district is not required by the [IDEA] to pay for the special education programming of a student whose parents did not and do not reside in either that district or the State of New Hampshire." MSD argues from this assumption that the IDEA dictates that financial

-14-

liability for special education be determined by a student's legal residency and not by any other criterion. Because Kimberli is not, in MSD's view, a "legal resident" of New Hampshire, MSD says that it cannot be held liable for her education costs.

Contrary to MSD's position, however, the IDEA contains no provision dictating which district or agency within a state must assume financial liability for special education services. The IDEA nowhere purports to allocate financial liability among the multitude of school districts housed within the fifty states. And while the IDEA, as a condition of federal funding for any state, requires a state to provide a free appropriate public education to children with disabilities "residing in the State," § 1412(a)(1)(A), it does not purport to limit the provision of such an education to children who fit that standard, however interpreted. "Residing in" could, of course, include children like Kimberli, who have resided since infancy in a New Hampshire home. But even if the phrase were interpreted to exclude a minor like Kimberli the IDEA does not forbid a state from providing and funding a free appropriate public education to a disabled child who may not be a domiciliary of that state even if, arguably, the state is not required to do so and the child may in fact be a charge under the IDEA upon the custodial parent's state.[15]

---

[15]Whether Kimberli "resides in" New Hampshire or in Ohio, as that phrase is used in the IDEA, is therefore not a question we need decide here and we do not do so. Congress's intent in the IDEA was, at a minimum, to provide a free appropriate public education to all disabled children residing in the state. Given Congress's overall wish to assist children with disabilities, it would make little sense to read into the IDEA an implied

The federal statute, as we say, leaves the assignment and allocation of financial responsibility for special education cost of local school districts to each individual state's legislature. The IDEA provides states with federal funds to help defray the costs of educating children with disabilities. It requires, as a condition of the receipt of federal financial assistance, that a State enact the policies and procedures necessary to ensure that the mandates of the statute are met. See 20 U.S.C. § 1412; 34 C.F.R. § 300.600(b). This duty includes the allocation of financial responsibility for certain special education services. § 1412(a)(12)(A)(ii). But it is the New Hampshire legislature, and not Congress, that assigns and allocates liability for the expenses incurred by a school district administering the mandates of the IDEA.

The cases cited by MSD are not to the contrary. See, e.g., Catlin v. Sobol, 93 F.3d 1112, 1115 (2d Cir. 1996); Wise v. Ohio Dept. of Ed., 80 F.3d 177, 182 (6th Cir. 1996); Newton Pub. Schs., 25 IDELR 107 (1996). While each court assigned financial liability to the school district where the parent resided, the determination was based on an interpretation of the law of the relevant state and the particular facts of the case. Catlin, 93 F.3d at 1114 (interpreting New York law); Wise, 80 F.3d at 182

prohibition forbidding a state from providing public educational services to children like Kimberli who are present in the state although their parents are elsewhere. Whether New Hampshire is more generous than is strictly required for it to meet the IDEA's minimum standard for state funding is not a matter that offends against Congress's purposes in the IDEA nor does it offend any specific language in the IDEA.

(interpreting Ohio law); Newton Pub. Schs., 25 IDELR at 107 (interpreting Massachusetts law). While courts have sometimes suggested that there is a presumption that the residency of the student's parents dictates which school district bears the responsibility for meeting the requirements of the IDEA, see Catlin, 93 F.3d at 1122, no court has stated that the IDEA itself mandates that a state make determinations of school district liability based invariably on the parent's residency.

We therefore agree with the district court that the IDEA neither dictates the financial liability of particular school districts nor prevents a state from enacting laws providing for the payment of the special education costs of a child living at a school within the state whose parents reside outside the state. Put another way, it is to New Hampshire law, not federal law, to which we must look to determine whether MSD must pay for Kimberli's special education costs.

## B.       State Law and Liability

The New Hampshire legislature has provided a statutory framework for assigning responsibility for special education costs as part of the state's responsibility to ensure that children with educational disabilities receive a free appropriate education as mandated by federal law. See N.H. Rev. Stat. Ann. § 186-C:1, et seq. Section 186-C:13[16], entitled "Liability for Expenses," provides that when a child with educational disabilities is placed

---

[16]This statute is set out, in relevant part, in the Appendix at the end of this opinion.

in a "home for children" the liability for expenses is determined in accordance with section 193:29.  Section 193:29 states that for any child "placed and cared for in a home for children, the sending district shall make payments to the receiving district."  The statute defines sending and receiving district as follows:

**193:27 Definitions**

> IV. "Sending district" means the school district in which the child most recently resided other than in a home for children, the home of a relative or friend in which the child is placed by the department of health and human services or a court of competent jurisdiction . . ., health care facility, or state institution, if such child is not in the legal custody of a parent or if the parent resides outside the state; if the child is retained in the legal custody of a parent residing within the state, "sending district" means the school district in which the parent resides . . . .

> V. "Receiving district" means the school district in which the home for children or health care facility is located . . . .

> VI. "School district" means a school district in the state.

The district court concluded that MSD was the "sending district" and thus liable for the special education services that Kimberli receives from the Pittsfield School District.  MSD attacks the district court's determination that it is the "sending district" in three ways.  First, MSD argues that it can no longer

-18-

be considered the "sending district" because the 1998 amendments to section 193:12 establish that Kimberli is not a "legal resident" of New Hampshire. Second, MSD avers that it is not the "sending district" because, based on the new definition of "legal resident" contained in 193:12, Kimberli never "resided" in Manchester prior to her placement at the Brock Home. Third, it contends that Kimberli was not "placed" in the Brock Home within the meaning of the statute because her placement was not facilitated by the New Hampshire Department of Health and Human Services or by court order.

MSD's first two arguments, that the amendments to section 193:12 relieve it of liability, are without merit. MSD's attempt to make section 193:12, and the definition of "legal resident" for purposes of school attendance, the focal point of the financial liability determination for special education costs is a red herring. The definition of legal resident contained in section 193:12 does not affect the particular statutory provisions on which MSD's liability to Kimberli turns.

Section 193:12 makes provisions for where students may attend school. The 1998 amendments[17] to 193:12 provided that a child may not attend a school in a district in which he or she is not a legal resident except in defined circumstances. One of the defined circumstances, of particular relevance to Kimberli's

_____

[17]Previously, 193:12 provided that "No person shall attend school, or send a pupil to school, in any district in which he is not an inhabitant, without the consent of the district or of the school board except as herein otherwise provided."

-19-

situation, is that a child placed and cared for in a home for children may attend the public school in which the home for children is located. § 193:12 V. Thus, pursuant to section 193:12, Kimberli is appropriately attending school in the Pittsfield School District - an issue not in dispute.

To the extent that section 193:12 addresses financial liability rather than only the place of school attendance, it follows the framework developed in section 186-C:13. Paragraph X of section 193:12, also added in 1998, provided that "[f]or the purpose of determining liability for a child placed or cared for in any home for children or health care facility, the provisions of RSA 193:29 shall apply." The legislature thus retained in 1998 the existing provision fixing the liability for the education of students, like Kimberli, placed in a home for children. Section 193:29, as already noted, provides that for any "child placed in a home for children, the sending district shall make payment to the receiving district." Thus, whether the liability analysis begins with section 186-C:13 or section 193:12, it proceeds to section 193:29 and, eventually, to the definition of "sending district."

MSD's further contention, that it is no longer the "sending district" because the new definition of "legal resident" contained in section 193:12 altered the meaning of "resided" for purposes of determining the "sending district," is unavailing. According to MSD, because Kimberli's parent were never "legal residents" of Manchester, Kimberli could not have "resided" in Manchester prior to her placement.

Contrary to MSD's position, the definition of "sending district" explicitly accounts for a situation in which a child attends school in New Hampshire and the parents reside outside the state. In those cases, the "sending district" is the school district in which the child "most recently resided" prior to placement in the home for children. The New Hampshire Supreme Court has interpreted the phrase "most recently resided" to mean the district in which the child lived prior to his or her placement - regardless of legal residency. See In re Gary B., 466 A.2d 929, 932 (N.H. 1983) (concluding in the context of 193:27 that resided "refers to the place where the a child actually lived . . . rather than to legal residence or domicile"). Accord New Hampshire Att'y Gen. Op. No. 85-17 (1985).

The legislature, when it amended the definition of "sending district" in 1998, kept the language "in which a child most recently resided." The Legislature is presumed to have been cognizant of the judicial interpretation placed upon the phrase "most recently resided" and "to have adopted that construction, in the absence of any change in the phraseology used or other competent evidence of a different purpose." Waterman v. Town of Lebanon, 95 A. 657, 658 (N.H. 1915); see also In re Cigna Healthcare, Inc., 777 A.2d 884, 889 (N.H. 2001). If the New Hampshire legislature had intended to alter the law with regards to liability determinations, as it did for attendance, it would have amended the language of the statute to reflect such a change. It did not.

MSD's third argument, that Kimberli was not "placed" in the Brock Home within the meaning of the statute because her placement was not facilitated by the New Hampshire Department of Health and Human Services or by court order, is not supported by the statute or the record. MSD grounds its argument in the 1998 amendments to section 193:27 that inserted into the definition of "sending district" the phrase "the home of a relative or friend in which the child is placed by the department of health and human services or a court of competent jurisdiction" following a "home for children." MSD argues that the phrase "placed by the department of health and human services or court of competent jurisdiction" now modifies the phrase "home for children."

MSD's suggested interpretation is not supported by the structure or language of the statute. As noted by the district court, the use of commas to separate the phrases plainly shows an intent by the legislature to limit the placed-by-the-state qualifier to the "home of a relative or friend." The state-involved limitation on the placement of a child with a relative or friend was apparently intended to curb potential abuse of the educational system. When children are placed with a relative or friend other than by state or court direction the parents may simply be sending their children off to cities or towns with better schools so as to obtain a public education believed to be superior to that available in the parents' hometown. In that instance, the district where the parents reside should not be, (and pursuant to 193:27 is not), financially liable for the child's education and

-22-

thus would not qualify as the "sending district."  In contrast, placing a child in a home for children is not likely to be a subterfuge for securing whatever extra educational benefits the home's school district may provide.  And to require a child living at such a home to attend school elsewhere, perhaps at a great distance, could be either impossible or enormously difficult.

While, therefore, the clause cited by MSD calling for departmental or court placement does not apply to minors like Kimberli placed in a home for children, we note that the instant record reveals that the New Hampshire Department of Health and Human Services <u>was</u> involved with Kimberli's placement in the Brock Home.  A file memorandum from the Moore Agency, dated May 22, 1989, states that Kimberli was placed in the Brock Home "by her parents[] following the recommendation of State Welfare."  Paula M., in a letter to the New Hampshire Bureau of Special Education Services dated May 26, 1992, states that she and Kimberli's father placed Kimberli at the Brock Home with the assistance of the Department of Children and Youth Services.  Further, Kimberli was and is a client of the Moore Center Services, Inc., an agency which is part of the State of New Hampshire's service delivery system for persons with development disabilities, which has funded and supervised Kimberli's placement since April 11, 1989.  Thus, however one reads the statute, Kimberli's placement in a home for children was closely under the auspices of the state.

Given New Hampshire's statutory framework, we find ourselves in accord with the rulings of the district court.  The

1998 amendments to the definition of "legal resident" for purposes of school attendance in no way served to relieve MSD of its financial responsibility under New Hampshire's statutory scheme. Our statutory interpretation and that of the district court comport with that of the NHDOE, the state agency responsible for the administration of the state laws in question. See N.H. Rev. Stat. Ann. § 186-C:3-a. In 1992, the NHDOE determined that Manchester was the district of liability and financially responsible for the costs of Kimberli's special education. It found that "[t]he most recent residence of Kimberli other than a licensed home was 213 Pine Street, Manchester, where she lived with her parents from birth to April 11, 1989." MSD concedes that it did not, as it could have, appeal from this decision to the State Board of Education or to a court of competent jurisdiction. Consequently, the NHDOE's decision became a final order and is binding upon MSD.

Not only has there been no change in the New Hampshire statutory landscape that would alter the NHDOE's original determination, MSD has not proffered any relevant change in circumstances since the NHDOE's 1992 decision that would entitle it to a different finding. MSD, moreover, is also now collaterally estopped from challenging the NHDOE's 1992 district of liability determination. Under New Hampshire law, administrative decisions are subject to the doctrine of collateral estoppel. Findings of an administrative agency may be given preclusive effect. Day v. N.H. Ret. Sys., 635 A.2d 493, 495 (N.H. 1993). Pursuant to this doctrine, MSD is not now free to challenge NHDOE's finding, made a

decade ago, that the district in which Kimberli most recently resided prior to her placement in the Brock Home was Manchester. The doctrine of res judicata has also been applied to administrative decisions in New Hampshire. Morin v. N. Heating & Plumbing Co., 309 A.2d 153, 155 (N.H. 1973). Under this doctrine, MSD is barred from challenging the NHDOE's conclusion that it was the district of liability for the costs associated with Kimberli's special education.

## III.    Certification

MSD requests this court to certify to the New Hampshire Supreme Court the question of whether the New Hampshire legislature intended to adopt a "residence-based theory of liability for a student's special education." We decline to do so. Not only is certification unnecessary, as discussed below, it was MSD, the party that initiated this action in the federal court, that now seeks certification to the state court. We have said that "one who chooses to litigate his state action in a federal forum must ordinarily accept the federal court's reasonable interpretation of extant state law rather than seeking extensions via the certification process." Santiago v. Sherwin Williams Co., 3 F.3d 546, 548 (1st Cir. 1993); Corteau v. Olin Corp., 884 F.2d 45, 46 (1st Cir. 1989). Under the IDEA, MSD had the option to bring a civil action "in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(i)(2). MSD moved to re-litigate this issue in the state court only after

-25-

extensive proceedings in the district court and after it became clear that it would not prevail there.

Moreover, certification is not warranted here in any event. The state law at issue is not ambiguous. See Basic Controlex Corp., Inc. v. Klockner Moeller Corp., 202 F.3d 450, 452 (1st Cir. 2000). There is controlling state precedent interpreting the New Hampshire statute allocating the financial liability for the education of an educationally disabled child. See Trull v. Volkswagen of Am., Inc., 187 F.3d 88, 104 (1st Cir. 1999). When state law is sufficiently clear, as it is here, to allow a federal court to predict its course, certification is both inappropriate and an unwarranted burden on the state court. Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP, 175 F.3d 14, 18 (1st Cir. 1999).

**IV.     Conclusion**

The judgment of the district court is **affirmed**.

All references below are to provision of the N.H. Rev. Stat. Ann. (1998).

**171-A:18  Area Agency Responsibilities and Operations**

    I.      The commissioner [of the Department of Health and Human Services] may designate . . . one area agency which shall be responsible for administering area-wide programs and services for developmentally disabled persons. Each area agency so designated shall be the primary recipient of funds . . . for establishing, operating or administering such programs and services.

**186-C:1  Policy and Purpose**

        It is hereby declared to be the policy of the state that all children in New Hampshire be provided with equal educational opportunities. It is the purposes of this chapter to insure that the state board of education and the school districts of the state provide a free appropriate public education for all educationally disabled children while taking into consideration the cost of that education when determining appropriateness.

**186-C:3-a Duties**

        [Because of the length of the provision and its tangential nature to the outcome of the opinion, we do not include it.]

**186-C:13  Liability for Expenses**

    I.      All expenses incurred by a school district in administering the law in relation to education for educationally disabled children shall be paid by the school district where the child resides, except as follows:

        (a)  When an educationally disabled child is placed in a home for children or health care facility as defined in RSA 193:27, the liability for expenses for such

child shall be determined in accordance with RSA 193:29

## 186-C:14  Surrogate Parents

III.  When, in the opinion of the commissioner of education, or designee, an educationally disabled child as defined in RSA 186-C:2. needs special education and the parent or the guardian of child is unknown or unavailable . . . the commissioner or designee shall appoint a surrogate parent who shall represent the child in the educational decision-making process.

## 186-C:16-b I  Due Process Hearing; Appeal

I.  Any action against a local school district seeking to enforce special education rights under state or federal law shall be commenced by requesting an administrative due process hearing from the department of education within 2 years from the date on which the alleged violation was or reasonably should have been discovered.

## 193:12  Legal Residence Required

I.  Notwithstanding any other provision of law, no person shall attend school, or send a pupil to the school in any district of which the pupil is not a legal resident, without the consent of the district or of the school board except as otherwise provided in this section.

II.  For purposes of this section, the legal residence of a pupil shall be as follows:

(a) In the case of a minor, legal residence is where her or her parents reside, except that

(2) In a divorce decree . . . . If a parent is awarded sole or primary physical custody . . . legal residence of a minor child is the residence of the parent with the sole or primary custody.  If the parent with sole or primary physical custody lives outside the state of New Hampshire, the pupil does not have residence in New Hampshire.

(b) No minor placed in a home for children or a health care facility, as

defined in RSA 193:27, by another state which charges the state of New Hampshire . . . for the regular or special education costs for New Hampshire children placed in that state, shall be considered a legal resident for purposes of school assignment, unless the sending state agrees to reimburse the receiving district, as defined in 193:27, for regular education and special education costs.

* * *

V.     Except as provided in subparagraph II(b), nothing shall limit or abridge the right of any child placed and cared for in any home for children, as defined in RSA 193:27, or of any child placed in the home of a relative of that child by the department of health and human services, or placed in the home of a relative or friend by a court . . . , to attend the public schools of the school district in which the home for children or home of the relative or friend in which a child is placed . . . .

* * *

X.     For the purposes of determining liability for a child placed and cared for in any home for children or health care facility, the provision of RSA 193:29 shall apply.

**193:27     Definitions**

I.     "Home for children" means an orphanage; institution for the care, treatment or custody of children, child care agency as defined by RSA 186:11, 170-E:25, II and III; or any residential school approved under RSA 186:11, XXIX.

* * *

IV.    "Sending district" means the school district in which the child most recently resided other than in a home for children, the home of a relative or friend in which the child is placed by the department of health and human services or a court of competent jurisdiction . . ., health care facility, or state institution, if such

-29-

child is not in the legal custody of a parent or if the parent resides outside the state; if the child is retained in the legal custody of a parent residing within the state, "sending district" means the school district in which the parent resides . . . .

V.  "Receiving district" means the school district in which the home for children or health care facility is located . . . .

VI.  "School district" means a school district in the state.

## 193:28  Right of Attendance

Whenever any child is placed and cared for in any home for children . . . such child, if of school age, shall be entitled to attend the public schools of the school district in which said home is located . . . .

## 193:29  Liability for Education of Children in Homes for Children or Health Care Facilities

I.  For any child placed and cared for in any home for children or health care facility, the sending district shall make payments to the receiving district . . . .